## J. CAMPBELL *v.* THE STATE.

1. INDICTMENT. — The Code of Criminal Procedure, in art. 420, directs that an indictment "shall be signed officially by the foreman of the grand jury," but in art. 529 expressly provides that "the want of the signature of the foreman of the grand jury" shall not constitute cause of exception to the form of an indictment. *Held*, that this latter provision, in effect, makes the foreman's signature unnecessary to the validity of an indictment.

2. EVIDENCE. — In a trial for murder, the prosecution elicited from a witness a statement of the defendant imputing to the deceased an outrage on the defendant's daughter, and then was allowed, over objections by the defence, to draw out the reply and advice of the witness to the defendant, to the effect that defendant's neighbors disbelieved the imputed outrage, and that defendant had better drop the matter, etc. *Held*, that the reply and advice of the witness were not legitimate evidence against the defendant, and may have prejudiced his rights.

3. SAME. — Over objection by the defence, the prosecution was allowed to prove certain statements of the deceased, made a day or two before the homicide and in the absence of the defendant, to the effect that he, the deceased, had not been in the county for a year previous to that occasion, — which, if true, exonerated him as the perpetrator of the outrage on the defendant's daughter. *Held*, that the statements were but hearsay, and should have been excluded.

4. SAME. — The deceased was found dead, but was not recognized by any one who saw his corpse, and the prosecution, for the purpose of identifying him, was allowed to prove not only the apparel and appearance of the body, but also the description and contents of a valise found a short distance from it. *Held*, correct.

APPEAL from the District Court of Parker. Tried below before the Hon. A. J. HOOD.

The indictment charged the appellant with the murder of John Booth, by shooting him with a pistol on September

28, 1879. The jury found him guilty of manslaughter, and assessed his punishment at three years in the penitentiary.

There was no eye-witness of the homicide. On October 2, 1879, the dead body of a man was found in a ravine some twelve miles north of Weatherford, and about two hundred yards from the road leading to Veal's Station. It had obviously been dragged thirty or forty steps from a spot where the grass and ground bore plain indications of a conflict. The body was perforated with three gunshot wounds, and the witness thought that from three days to a week had elapsed since the homicide. No one who saw the body was able to identify it, or was acquainted with John Booth, for whose murder the appellant was on trial. By personal description, however, and articles found on and near the body, the prosecution was enabled to identify it as that of a man who passed the night of the preceding September 27th at the house of John Galbraith, two miles south of Weatherford, and who, in May, 1878, was known to Galbraith as John Booth. Since that time Galbraith had seen or known nothing of Booth until the latter came to his house, on foot, on Saturday, September 27, 1879, and left the next morning for Decatur in Wise County, by way of Veal's Station. Witness Galbraith identified as Booth's a memorandum-book and certain papers and other articles found in a black valise which was picked up near the body of the deceased. In the forenoon of the same day on which Booth left Galbraith's, the defendant came and inquired of Galbraith if he had seen anything of a man whom Galbraith, by the defendant's description, recognized as Booth. Galbraith, having told the defendant that the man stayed at his house the previous night, inquired what was the matter. The defendant said that on the day previous the man had stopped at his house to get some water, and that defendant's daughter had recognized him as the same man who had nearly beat her to death and tried to ravish her in the preceding month of August, when, she said, the man

was bundled up in rags and had on a wig and beads. Defendant was on horseback, and said he would go on and overtake the man and have a talk with him, and asked witness to say nothing about his making inquiry about the man.

Later on the same day, another witness met the defendant a short distance beyond Weatherford, on the road to Veal's Station, and, in reply to defendant's inquiries, informed him that he, the witness, had met a footman some four miles further on who answered the description of the man afterwards found dead. The defendant then went on in a lope.

Mrs. Campbell, the defendant's wife, testifying for him, stated that their daughter, about eighteen years of age, left their house one afternoon early in August, 1879, to go to her uncle's, about a mile distant. Between sunset and dark the same evening, she was brought back by her father, the defendant. She was badly bruised on the side and back, and blood gushed from her mouth, and she was confined to her bed for three weeks. She said, on getting back home, that as she was crossing a fence on the way to her uncle's, a man pulled her back and threw her down, stuffed a rag in her mouth, and beat her; that he was bundled up in rags, had beads around his neck, bracelets on his wrists, a breast-plate, moccasin shoes, and long hair, supposed to be false; and that he was a low, heavy-set man, with dark complexion and black hair and mustache, — a description which accords pretty well with the physical characteristics of John Booth.

Mrs. Campbell further testified that on September 27, 1879, a man stopped at their gate, and that her daughter, immediately on observing him, exclaimed, "Lord have mercy! Mother, there is the man who hurt me," and started to the field, hallooing for her brother; whereupon the man went up the road about a hundred and fifty yards and sat down; but when he saw witnesses's son coming towards him, he ran off through the bushes. The defendant was informed of all this the same day, and went to

Weatherford and tried to get Kidwell, the sheriff, to pursue and arrest the man, in order that he, the defendant, might ascertain if he was the man who had maltreated his daughter.

The defendant's daughter testified to the assault made upon her in August, and to the other matter stated by her mother; and the defendant's son corroborated so much of their testimony as he had opportunity to know.

The opinion indicates the special matters of fact involved in the rulings.

*Lanham & Roach*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, and *J. W. Stephens*, for the State. ·

WHITE, P. J.   Whilst it is true that, in defining what requisites to an indictment shall be deemed sufficient, our Code of Criminal Procedure, at subdivision 9 of art. 420, provides that "it shall be signed officially by the foreman of the grand jury," yet when the same Code comes to provide for the only exceptions of form to an indictment which will be entertained and allowed, it expressly excepts "the want of the signature of the foreman of the grand jury" (Code Cr. Proc., art. 529), and in effect declares that the want of such signature is not a matter affecting one way or another its validity.

A similar objection was submitted, for the first time we believe, in *Pinson* v. *The State*, 23 Texas, 579, and our Supreme Court said: "The law contemplates that the foreman of the grand jury shall sign the indictment, and it ought always to be done; and in such manner that no question can be started about it.   The foreman should also, as a distinct act, make his certificate that the indictment was found on the testimony of certain witnesses, naming them. Indictments are continually coming under our observation

that show a very reprehensible negligence on the part of those who prepare them.   *   *   *   The indictment ought to be signed by the foreman of the grand jury, to show in the most unequivocal manner that it is the act of the grand jury." Citing, however, and construing the same two articles which we have referred to above, it was held in that case, that although the indictment is required to be signed by the foreman of the grand jury, an omission to comply with this requirement is not fatal either on exception or in arrest of judgment.   And this view of the subject was again expressed in *The State* v. *Powell*, 24 Texas, 135, and *Hannah* v. *The State*, 1 Texas Ct. App. 578.

It is unnecessary to discuss or cite authority to show that the other questions raised as to the validity of the indictment in this case are untenable.   The indictment, to all intents and purposes, sufficiently charges the offence in plain and intelligible language, and with such certainty as to apprise the defendant of the specific matter he was called upon to answer, and to enable him to plead it in bar of any other prosecution for the same offence.   Without noticing all the errors complained of, — and there are eight enumerated in the assignment of error, — we propose only to address ourselves to three others, remarking as to those not noticed that they are not considered of any special moment or importance.

As shown by the second bill of exceptions, we are of opinion the court erred in allowing the witness Kidwell, over objections, to testify that " he (Kidwell) told the defendant that his neighbors had no confidence in the fact of his daughter being outraged; that there was a strong feeling against him in the neighborhood; and I advised him to let it drop." This gratuitous advice and personal opinion of the witness, founded, as he stated, upon hearsay as to the opinions of others and the strong feelings of defendant's neighbors in the premises, was by no means a part of defendant's statement, or binding upon him; nor did it tend

in any manner to explain any statement or declaration made by defendant, but was entirely irrelevant and independent. Kidwell's opinion, founded upon hearsay as to neighborhood talk and feeling, was not, by any rule of evidence of which we are aware, legitimate testimony against defendant. It does not come within the purview or spirit, much less the letter, of the statute which declares that "when part of an act, declaration, or conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other.  *  *  *  And when a detailed act, declaration, or conversation or writing is given in evidence, any other act, declaration, or writing which is necessary to make it fully understood or to explain the same may also be given in evidence " (Code Cr. Proc., art. 751) ; because Kidwell was the witness for the State, and " the other party," the defendant, was actually objecting instead of assenting to and seeking to draw this matter out as " part of the whole conversation."

The theory of the defence was that defendant's daughter had been brutally maltreated by deceased, and that this was the motive which induced defendant to take his life, if indeed he had done so. The bare opinions of his neighbors as to whether or not the outrage had been perpetrated upon his daughter was not evidence one way or the other of that fact, and certainly should not have been permitted to go to the jury with a view of counterbalancing or overriding defendant's belief or opinion that the outrage had in fact been committed. The neighbors might honestly have believed the one way, and defendant as honestly, and with better and stronger reasons perhaps, have believed the other ; and his belief might have been correct notwithstanding they did not concur in it. The testimony was wholly inadmissible, and was calculated, if it had any effect at all, to prejudice defendant in the very gist of his defence. It is not required of us to speculate or conjecture how far it had that effect.

The objectionable evidence complained of, as shown by

the third bill of exceptions, is similar in nature and character to that we have just been considering, it being hearsay. The witness Pickard was allowed to testify what the deceased had told him when at his (witness's) house, about where he (the deceased) had been during the last year. The object of this testimony was doubtless to show that, according to deceased's own statement, he had not been in the county for a year, and that consequently he could not have been the party who committed the outrage upon defendant's daughter. Being hearsay, the declarations were inadmissible for that purpose, and the court should have excluded them from the jury.

We see no good reason why the court should have excluded evidence of the contents of the valise of deceased, or the memoranda in the blank-book and the mail-contract found therein, since these were circumstances going to establish the identity of the deceased, who appears to have been a stranger to all the witnesses who saw the body after the homicide.

As stated above, the other errors complained of are not specially commented upon, because they are not considered well taken. For the reason that the court erred in admitting the objectionable testimony pointed out and discussed, the judgment will be reversed, and the cause remanded for a new trial.

*Reversed and remanded.*